METROPOLITAN RUBBER CO. v. OHRNDORF et al.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 943.

GUARANTY—REVOCATION—QUESTION OF FACT.

Plaintiff held a written guaranty, signed by defendants, covering purchases made on credit by a customer. It was agreed between plaintiff and the president and general manager of the debtor company that the existing account should be closed by notes indorsed by defendants, and that the guaranty should be surrendered. Notes were given, but were not indorsed, and the guaranty was held by plaintiff as collateral thereto. Held, that whether it was revoked so far as related to future purchases was a question of fact depending on the understanding of the parties, and was for the jury.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This is a suit by the Metropolitan Rubber Company, the plaintiff in error, hereafter termed the "Rubber Company," against Charles W. Ohrndorf and James Ruane, the defendants in error, on the following written guaranty:

"We, the undersigned, C. C. Peters, Charles W. Ohrndorf, and James Ruane, of St. Louis, Missouri, in consideration of the granting of credit by the Metropolitan Rubber Company * * * to Peters Rubber & Supply Company, a corporation duly organized under the laws of Missouri, and in further consideration of one dollar in hand to each of us duly paid, the receipt whereof is hereby acknowledged, do hereby jointly and severally guaranty the payment by said Peters Rubber & Supply Company to said Metropolitan Rubber Company, on the day that it becomes due, of each and every amount due to said Metropolitan Rubber Company for goods sold said Peters Rubber & Supply Company, and, if said amounts are not so paid when due, we will ourselves at once pay the same. Should the said Metropolitan Rubber Company extend the time of payment of any amount due as above from said Peters Rubber & Supply Company, or should said Metropolitan Rubber Company take a promissory note from said Peters Rubber & Supply Company for any amount due or to become due, that guaranty

shall hold for said extensions or for said notes: provided, however, that said guarantors shall not be held liable under the provisions of this instrument for an amount greater than ten (10) thousand dollars.

"In witness whereof, etc. * * *"

In its complaint the plaintiff alleged, in substance, that on the faith of said guaranty it had sold and delivered to the Peters Rubber & Supply Company, hereafter termed the "Supply Company," goods of the value of $14,867.81; that a large sum, exceeding $10,000, was due to it on account of such sales, wherefore it demanded a judgment against the guarantors in the sum of $10,000. The defendants answered, pleading several defenses; among others that in May, 1895, the guaranty had been revoked by the guarantors; that at the date of such revocation in May, 1895, the amount then due to the Rubber Company from the Supply Company had been ascertained; that notes had been executed for the amount of the indebtedness at that time; that said notes had been subsequently paid, save the sum of $957.12; and that, with the exception of said unpaid balance due on said notes, all the goods for which the plaintiff sought to hold the guarantors liable under their guaranty had been sold to the Supply Company subsequent to the revocation of the guaranty. To establish the revocation of the guaranty, the defendants offered the following correspondence between the parties, both by mail and telegram:

"St. Louis, Mo., May 11th, 1895.

"Metropolitan Rubber Company, Foot of Grand St. and East River, New York City, N. Y.—Gentlemen: We are in receipt of your statement and letter asking us to remit you $800, which is due on your account. In reply will say that we figure that your entire account, which is some $5,500 or $5,600, averages due the 15th of May. When your Mr. Dowse was here, we took the matter up with him, and showed him that the goods were all in the house except $500 or $600. Owing to the fact that we received these goods too late for our spring business, we were compelled to turn down the orders, or go out and buy the stuff in town to fill them. Our directors talked the matter over, as I have stated above, with your Mr. Dowse, and he agreed that on the 15th of this month we send you $1,000 in cash, and negotiable notes for the balance, falling due in 30, 60, and 90 days. If that is satisfactory, please advise me by return mail, as I should like to have the matter straightened up before I come East, which I am trying to do next week. Our directors also told Mr. Dowse that, as our business had reached that point that they felt we should be able to buy goods on negotiable paper from this on, we should like to recall the guaranty that we have placed with you after this account is settled. Hoping that this is satisfactory to you, and wishing to hear from you by return mail, we remain,

"Yours, truly, Peters Rubber & Supply Company.

Chas. C. Peters, President."

"New York, May 13th, 1895.

"Peters Rubber & Supply Company, St. Louis, Mo.—Gentlemen: Yours May 11th at hand. Contents noted. In reply would state, if you will send us a check for $1,000, and notes payable to the order of your company, indorsed by the company, also individually by each one of your directors for 30, 60, and 90 days, divided in equal amounts, with interest added in settlement of our account, it will be satisfactory to us. After the notes are paid, we will return to you the guaranty which was given us when the goods were purchased.

"Yours, truly, Metropolitan Rubber Company,

"Per C. A. Place."

"St. Louis, Mo., May 15th, 1895.

"Metropolitan Rubber Company, Foot of Grand St. and East River, New York City—Gentlemen: We are in receipt of yours of May 13th, and note contents very carefully. We shall have the notes made up and forwarded with our check

for $1,000, which we hope will be satisfactory to you. In order to give the individual indorsements of our directors, I would have to send notes away, as two of our directors are out of the city, and, I am afraid, will not return before I leave for the East. We had decided to give you negotiable paper, and let the guaranty that you have stand until the last note is paid, which we think is about the same. If this is satisfactory to you, please advise me immediately, and, if it is not, I shall have to send the notes to them for indorsement. Am more than anxious to get away and be in New York next Tuesday or Wednesday, if possible. By complying with above request, you will confer a great favor upon,
"Yours, truly,                              Peters Rubber & Supply Company,
                                                 "Chas. C. Peters, Prest."

"St. Louis, Mo., May 22, 1895.
"To Metropolitan Rubber Company, Foot Grand St.: Am waiting answer letter fifteenth before leaving. When can I expect it? Answer.
                                          "Peters Rubber & Supply Company."

                                                  "May 22d, 1895.
"Peters Rubber & Supply Company: Settlement as per letter will be satisfactory.                               Metropolitan Rubber Company."

                                          "New York, May 23, 1895.
"Peters Rubber & Supply Company, St. Louis, Mo.—Gentlemen: Your telegram of 22d inst., reading: 'Am waiting answer letter fifteenth before leaving. When can I expect to receive it?'—at hand. In reply would state we have read your letter of May 15th very carefully, and come to the same conclusion now that we did at the time the same was received,—that it was your intention to leave for New York before we could answer the same; consequently did not reply. You stated in your letter that the best you could [possibly] do would be to give us check for $1,000, and the notes without indorsement, as your directors were away. We replied to your telegram as follows: 'Settlement as per letter will be satisfactory,'—which we presume you duly received.
"Yours, truly,                              Metropolitan Rubber Company,
                                                 "Per C. A. Place."

                                          "St. Louis, Mo., May 23rd, 1895.
"Metropolitan Rubber Company, New York—Gentlemen: In writing you on May 15th, I asked an immediate reply to my letter, and, not having received same by the 22d, I concluded to wire you, and presume from your answer that you want the notes indorsed. I have made the notes, and sent them away for indorsement, and expect to forward same to you by Saturday. As these notes will be personally indorsed, we will ask you to return our agreement, as one covers the other. The writer will be in your city in a few days. Hoping the same is satisfactory to you, we remain,
"Yours, truly,                       Peters Rubber & Supply Company."

At the date of this correspondence Charles C. Peters was president of the Supply Company; one of the defendants (Charles W. Ohrndorf) was its treasurer, and the other defendant (James Ruane) was a director. On or about June 5, 1895, Peters, the president of the Supply Company, was in New York, and while there he appears to have executed, in the name of his company, four notes for the sum of about $1,000 each, payable in one, two, three, and four months, respectively, and to have also executed a sight draft for $1,209.01 in settlement of the account of the Rubber Company against the Supply Company, which then amounted to $5,744.03. These notes do not appear to have been indorsed by the defendants, or any one else, and on the delivery of the same to the Rubber Company the guaranty sued upon was not surrendered, but was retained in its possession. Subsequent to this transaction, and in the months of June and July, 1895, further sales of goods were made by the Rubber Company to the Supply Company, as the plaintiff contended, on the faith of the guaranty. The

notes executed on June 5, 1895, were paid prior to the institution of this suit, with the exception of the sum of $957.12, which remained due on the last note.

The trial court directed a verdict for the plaintiff company for the balance due on the notes, to wit, $957.12, and interest, holding, as matter of law, that the defendants were not responsible on the guaranty for the goods sold by the plaintiff to the Supply Company, subsequent to the settlement of June 5, 1895. To reverse the judgment founded on such instruction, the plaintiff below has sued out a writ of error.

Wm. H. Clopton and J. H. Trembley, for plaintiff in error.

J. Hugo Grimm, for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The sole question presented by this record which requires consideration is whether the evidence produced on the trial of the case conclusively showed that the guaranty sued upon was canceled by the guarantors, as to future purchases, on June 5, 1895, and from that time forward was held by the plaintiff below simply as security for the payment of the four notes and the sight draft which were on that day executed in its favor by the Supply Company to settle the indebtedness which it then owed? So the trial court appears to have held, and its ruling to that effect is the only point which is challenged by the assignment of errors.

It may be conceded that prior to June 5, 1895, a proposition had been made by the plaintiff company, and had been accepted by the Supply Company, which contemplated the cancellation and surrender of the guaranty. This proposition, as at first made and accepted, required the Supply Company to pay $1,000 in cash, and to execute three notes in equal amounts at 30, 60, and 90 days, which were to be indorsed by the board of directors of the supply company individually, in settlement of the then existing indebtedness of the Supply Company, amounting to about $5,744. A modification of this proposition seems to have been subsequently proposed and assented to, by virtue of which the indorsement of the notes by the directors was waived, but the guaranty was to remain in force as a security for their payment. This arrangement, however, was wholly executory, at least until June 5, 1895, and even then it does not seem to have been carried out according to its terms. Four notes were executed by the Supply Company at 1, 2, 3, and 4 months, in lieu of three notes at 30, 60, and 90 days, and a sight draft was drawn for the balance of the indebtedness, instead of paying the same in cash. Moreover, the agreement in question, which contemplated a surrender of the guaranty after the notes given in settlement of the accrued indebtedness had been paid, was negotiated by Charles C. Peters, as president of the Supply Company, and there is no evidence in this record tending to show that he was acting in that behalf by direction of the guarantors, to secure their release from further liability, or that they were even aware of what was being done in

their interest. If the guarantors were aware of what had been done in their behalf prior to Peters' departure for New York, and if they supposed that he went there to consummate a settlement with the plaintiff company, which would relieve them from responsibility for future purchases, the evidence contained in this record fails to disclose such facts. Neither is there any testimony that the guarantors ever notified the plaintiff company that they desired to be released from the guaranty, or that they would not be responsible on the same for further sales. There was evidence, however, which established the following facts, namely: That when Peters went to New York, in June, 1895, and executed the notes heretofore mentioned in settlement of the old account, he endeavored to make further purchases from the plaintiff company; that the plaintiff declined to make sales to the Supply Company on its own credit, and that, after endeavoring to obtain goods elsewhere, Peters finally represented to the plaintiff's president that he had communicated with his people in St. Louis, and that they were willing to let the guaranty stand as security for future purchases. On the strength of this representation, and without knowledge or notice that the president of the Supply Company was acting without the consent of the guarantors, further goods were sold and delivered to the Supply Company during the months of June and July, 1895. It does not appear that when such goods were received the guarantors disclaimed individual liability for the indebtedness so contracted. Testimony was also introduced to the following effect: That as late as the middle of July, 1895, Peters, at the office of the Supply Company in the city of St. Louis, and in the presence of Ruane, one of the guarantors, made application to the secretary of the plaintiff company to purchase additional goods for the Supply Company on credit, and was then informed in Ruane's presence that such additional goods could only be obtained on the credit of the existing guaranty. To this statement the defendant Ruane appears to have paid no attention and to have made no reply. It was also shown that Peters, Ruane, and Ohrndorf were the sole members of the board of directors of the Supply Company, and that Peters acted as general manager of the company's business.

In view of the foregoing facts we are constrained to hold that the court erred in directing a verdict in favor of the plaintiff for the sum of $957.12, and in holding as matter of law that there could be no recovery in excess of that sum and the accrued interest thereon. The guaranty in suit being unlimited as to time, the delivery of the four notes and the sight draft in settlement of the indebtedness which had occurred prior to June 5, 1895, did not discharge the guarantors from liability for further purchases made by the Supply Company on the credit of the guaranty, unless the notes and draft were delivered and accepted in pursuance of an understanding by both parties that the delivery of the notes and draft should have that effect; and whether such was the understanding and intent of the parties when the notes and sight draft were delivered, was properly a question for the jury. The burden rested upon the defendants to show that they had been released from liability on their guaranty for all goods bought by the Supply Company after June 5, 1895, and it cannot be said that at the conclusion of the trial that fact was so well established that the jury

could not reasonably have found to the contrary. The notes as executed and delivered were not drawn in accordance with the terms of the agreement that is disclosed by the correspondence, while there was no direct evidence that the plaintiff company consented to a modification of the terms of that agreement at the time they were delivered. We think, therefore, that it was the province of the jury to infer and find, from all the circumstances attending the transaction, whether the notes and draft were in fact accepted by the plaintiff company with the understanding that the guaranty should be thereafter retained only as a security for their payment, and not as a security for future purchases.

But, even if we are mistaken in this view of the case, and if the trial court was right in holding, as matter of law, that the plaintiff accepted the notes and drafts in question under the terms of the agreement evidenced by the correspondence, and that it thereby acknowledged that that agreement had been fully executed, yet it is nevertheless true, we think, that there was some evidence before the jury which tended to show that the defendants, subsequent to June 5, 1895, consented to the further use of the guaranty as security for future purchases. As has been stated heretofore, one witness for the plaintiff testified without objection that in June, 1895, Charles C. Peters, the president of the Supply Company, represented to the plaintiff company that the guarantors had consented to let the guaranty stand as security for future purchases, and that all goods thereafter· sold to the Supply Company were sold on the credit of the guaranty. Neither of the defendants testified that they did not give such consent to the use of the guaranty as a means of obtaining credit, subsequent to June 5, 1895; and, even if they had done so, the issue concerning such consent should have been submitted to the jury under proper instruction. It results from these views that the judgment below must be reversed, and the cause remanded for a new trial. It is so ordered.